MATTEI, PLAINTIFF AND APPELLANT, *v.* BADILLO, DEFENDANT AND RESPONDENT.

APPEAL from the District Court of Aguadilla in an Action for an Injunction to Recover the Possession of Real Property.

No. 1109.—Decided July 16, 1914.

INJUNCTION—RECOVERY OF POSSESSION—FORCIBLE OR FRAUDULENT ACTS.—In enacting that dispossession must be accomplished by forcible or fraudulent acts, Act No. 43 of March 13, 1913, does not make it a necessary requisite that dispossession shall be effected by physical force or fraud, it being sufficient that it be done against the will of the possessor or without his consent.

ID.—FORCIBLE OR FRAUDULENT ACTS.—When a person is deprived of the possession of his property against his will, this constitutes a forcible act which may be carried into effect by force, intimidation, threats or any other act affecting the liberty of the possessor. When a person is deprived of his possession without his consent, there exists a fraudulent act which can be carried into effect by means of fraud or deceit, properly speaking, or by any other act equivalent to deceit, for example, surprise or acts performed unknown to or behind the back of the holder.

ID.—FORCIBLE OR FRAUDULENT ACTS—THREATS—FENCING IN LAND.—A person is deprived of possession by forcible or fraudulent acts when, as in the case at bar, it is proved that the defendant threatened anyone entering the land with imprisonment, which involves an element of force, and, in addition,

placed a fence around the land and put up a sign forbidding entrance, to the surprise and behind the back of the lawful owner, thereby showing a fraudulent attempt to dispossess the owner, which may be classified as a fraudulent act.

The facts are stated in the opinion.

*Mr. Luis Montalvo Guenard* for the appellant.

*Mr. Juan B. Soto* for the respondent.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

This is an action to recover the possession of certain real property and in the complaint the plaintiff, Luisa Mattei, widow of Campos, prays for an injunction against the defendant, Teodoro Badillo, for the restoration to her of the material possession of three and a half *cuerdas* of land of which she has been deprived and requiring the defendant trespasser to abstain henceforth from the commission of any such act as he has committed or other acts depriving her of the possession, under the penalty of contempt of court for disobedience of the injunction, pursuant to Act No. 43, approved March 13, 1913, with costs, disbursements, and attorney's fees against the defendant.

The plaintiff alleges the following facts as constituting her cause of action, namely: That she is the owner of a rural property consisting of 4.25 *cuerdas* of land in the ward of Guayabo of the district of Aguada, which property is recorded in the registry of property; that she was in actual possession of the said property within four months immediately prior to the filing of the complaint; that the defendant owns another property which bounds the said property on the south and west and appears as the property of Genaro Chaparro; that under the pretext of separating the two properties the defendant put up a wire fence on the property of the plaintiff, forcibly and fraudulently depriving her of the possession of three and a half *cuerdas,* more or less, of her property on the south and west, and that the defendant is performing acts of ownership on the land of which she has been dis-

possessed by plowing it and preparing to plant it to sugar-cane.

The defendant denied the fundamental allegations of the complaint and as new matter of defense alleged that he is the owner and possessor in fee simple of a tract of land in the ward of Guayabo which he acquired by purchase from Genaro Chaparro by a deed of January 27, 1913, which deed is recorded in the registry of property, and that he has put up a wire fence on the said property which does not enclose any property belonging to the plaintiff.

After trial and on December 18, 1913, the court rendered judgment denying the injunction prayed for, reserving to the parties such rights as they might have to the ownership or possession of the lot of land referred to in the complaint, with costs against the plaintiff.

From that judgment counsel for Luisa Mattei appealed to this court.

The principal ground for the dismissal of the complaint, as stated by the court in its opinion, is that the evidence introduced by the plaintiff at the trial is insufficient to sustain the essential allegations of the complaint even when considered separately, and when considered in conjunction with that of the defendant it is totally inadequate to sustain the action. The appellant bases her appeal on the ground that the court erred in weighing the evidence, which she endeavors to prove by a detailed review thereof.

According to the complaint the three and a half *cuerdas* of land, of whose possession the plaintiff has been deprived, are located on the south and west of a property belonging to her containing 4.25 *cuerdas* of land, bounded on the north by lands of José Ramón Badillo and Miguel Bonet; on the south by the river and by lands of Genaro Chaparro; on the east by the same river which separates it from lands of Luisa Mattei, and on the west by lands of the said Genaro Chaparro.

It was shown by documentary evidence that on July 14,

1913, the deputy marshal of the District Court of Aguadilla delivered possession to Pedro F. Acevedo, as representative of the plaintiff, Luisa Mattei, of a property of the area and boundaries above described in execution of a judgment rendered in an action of unlawful detainer brought by the former against Genaro Chaparro, and that the said property was adjudicated to the said Luisa Mattei on June 14, 1907, in a deed of partition of the estate of her deceased husband, Elias Campos, which deed was recorded in the registry of property.

Let us examine the oral evidence introduced at the trial by both parties.

### WITNESSES FOR THE PLAINTIFF.

*Pedro F. Acevedo.*—He knows that Luisa Mattei has, among other properties, a property containing 4.25 *cuerdas* of land, which is bounded on the south and west by lands of Genaro Chaparro and a river; on the north by lands of Ramón Badillo, now belonging to Rafucci and Miguel Bonet, and on the east by a country road leading to the ward of Cruces, which property is divided into two tracts by a country road—one tract containing 3 and the other 1.25 *cuerdas;* that as representative of Luisa Mattei he took possession of said property on July 14, 1913, when delivery of the same was made to him by the deputy marshal of the District Court of Aguadilla, and that later he delivered the same property to an employee of Giorgetti.

*Pedro J. Bou.*—That he is the employee of Giorgetti to whom Acevedo refers and took possession as such employee on July 14 or 15, 1913, of three *cuerdas* of land forming part of a tract of 4.25 *cuerdas* to which the marshal of the District Court of Aguadilla had formerly given possession to Pedro F. Acevedo in the name of the plaintiff; that as he was not certain of the boundaries, Boucher made a survey of the tract of three *cuerdas,* and on the following day he directed Ulises García to fence in the same assisted by another who

knew the boundaries, but the work was not done by them; that on the day after he ordered the fencing he passed by the property and saw a sign reading "No Admittance," but does not know who put it there; that he saw a fence supported by wooden stakes on the part of the property adjoining the country road and that the said fence enclosed the lot of three *cuerdas;* that he knows Teodoro Badillo who stated on one occasion that that land belonged to him.

*Tomás Boucher, Surveyor.*—That between July 14 and 20, 1913, he made a survey of three *cuerdas* of land belonging to Luisa Mattei for account of Central Corsica and that the boundaries of said land are as follows: On the north by lands of the Successors of Rafucci, formerly the property of Ramón Badillo and Miguel Bonet; on the east by a country road, and on the south and west by lands belonging to Chaparro. The property surveyed is in the form of a rectangle on the lower part but irregular on the upper part; that he segregated the same from a property which belonged to Genaro Chaparro; that he made the partition of the property of Elias Campos in the year 1906 and surveyed the three *cuerdas* at that time; that said three *cuerdas* were adjudicated to the plaintiff together with another tract of one and a half *cuerdas,* the whole property containing four and a quarter *cuerdas* and being bounded on the north by lands of José Ramón Badillo and Miguel Bonet; on the south by lands belonging to Chaparro and a river; on the east by a road and the river, and on the west by lands belonging to Chaparro.

*Elías Delgado.*—Went with Surveyor Tomás Boucher between July 14 and 20, 1913, to mark the points of a tract of three and a half *cuerdas* of land, and Pedro, Giorgetti's overseer, told him to fence it in, but when he and another went to do so they found there the assistant overseer who told them that Badillo had said that he would imprison anybody who entered there, for which reason they were unable to put up the fence; that afterwards he saw a wire fence on the

property but does not know by whom it was put there, and also saw one of Badillo's laborers plowing the land with a yoke of oxen belonging to Badillo.

*Teodoro Badillo.*—Purchased from Genaro Chaparro a tract of ten *cuerdas* of land and at the time of the purchase put up a sign reading "No Admittance." He also ordered a fence to be put up, but the wires have not yet been strung; that the lands which Ramón Badillo and Miguel Bonet had there now belong to Rafucci, and that there is a country road on the east of it; that he had the portion bounded on the south by the lands which belonged to Ramón Badillo and Miguel Bonet plowed; that Pedro Bou presented himself and claimed three *cuerdas* of land as belonging to Luisa Mattei, and that he does not remember whether he presented himself about the time when he put up the sign.

### WITNESSES FOR THE DEFENDANT.

*Pedro F. Acevedo.*—Adds nothing material to his testimony as witness for the plaintiff.

*Teodoro Badillo.*—Explains that his property of 10 *cuerdas* is bounded on the east by a property of 1.25 *cuerdas* belonging to Luisa Mattei and that the 1.25 *cuerdas* belonged to a niece of the witness, he having sold it for her to Elías Campos, the plaintiff's husband; that the whole of the said property forms one single tract which is separated from the 1.25 *cuerdas* by a country road and is fenced in, and that it does not contain any part of the land belonging to the plaintiff.

Having examined jointly and relatively the probatory elements adduced from the evidence introduced at the trial by the plaintiff, which evidence is rather strengthened than contradicted by the evidence for the defendant, we are forced to the conclusion that the error assigned in support of the reversal of the judgment was really committed.

The plaintiff has proven clearly that she was in possession of her property of 4.25 *cuerdas* of land and that she has been

deprived by the defendant of the possession of three *cuerdas* of the said land. The marshal of the District Court of Agua-dilla placed her in possession of the whole of the said property by delivering the same to her representative, Pedro F. Acevedo. If Giorgetti was in possession of the land, he held in the name of the plaintiff, by whose instructions, according to Acevedo's testimony, possession was given to him, and just so that there should be no doubt about the boundaries of the three *cuerdas* of land a survey was made by the expert surveyor, Tomás Boucher. The land could not be fenced in by the plaintiff because of the opposition of the defendant who, as though the property were his, fenced it in and placed thereon a sign forbidding entry, depriving the plaintiff of that of which she or her representatives were in possession.

There can be no doubt that Act No. 43, approved March 13, 1913, to provide proceedings for the recovery of the possession of real property, requires that the deprivation of possession must take place by means of forcible or fraudulent acts.

This does not mean that in order to take advantage of the benefits of the said act it is a necessary requisite that a person be deprived of the material possession by force or fraud; for if this were so, the intention of the Legislature of establishing proceedings for carrying out the provisions of section 448 of the Civil Code, providing that every possessor has a right to be respected in his possession and that if he be disturbed therein he shall be protected or reinstated in such possession by the means established in the law of procedure, would be frequently abused.

Before the promulgation of the present Code of Civil Procedure the old law of procedure provided the interdict for the recovery of possession in cases like the present, and as that procedure was understood to have been repealed by the new Code of Civil Procedure, the Legislature sought to rees-

tablish the same, to a certain extent, by Act No. 43, to which we have referred.

According to the old law, the interdict for recovery lay when the person in possession or in tenancy of a thing, had been deprived of such possession or tenancy. The law was silent as to the means by which the deprivation was effected.

We are of the opinion that in providing that the deprivation must be effected by forcible or fraudulent acts, the new act does not make it a necessary requisite that the deprivation be effected by employing physical force or fraud. It is sufficient that it be done against the will of the owner or without his consent. In the first case, force, intimidation, threats, or any other means affecting the liberty of the owner might be employed, and then undoubtedly violent means would be used; while in the second case, or when the owner does not give his consent, certainly the deprivation of possession may be effected either by fraud or deceit, properly speaking, or by any other means equivalent to deceit, such, for instance, as surprise or underhand methods unknown to the owner.

In the case at bar both means were employed, for the defendant threatened to imprison any person who might enter upon the land in question, which involves an element of force, and, besides, fenced in the land and erected a sign prohibiting entrance upon the land, to the surprise and without the knowledge of the lawful owner, revealing artifice to effect the deprivation which may be termed a fraudulent act.

For the foregoing reasons the judgment appealed from should be reversed.

> *Judgment reversed and another rendered sustaining the complaint with costs against the defendant.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.